IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANN CORTEZ, § 
 § 
    Plaintiff, § 
 § 
v. §   Civil Action No. 3:08-CV-0801-K
 § 
RAYTHEON COMPANY, § 
 § 
    Defendant. § 

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion for Summary Judgment, filed July 15, 2009, and Plaintiff's Motion for Leave to File Sur-Reply Opposing Defendant's Motion for Summary Judgment, filed September 3, 2009. The court has carefully considered the motions, briefs, evidence submitted by the parties, and the applicable law. For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted.** Plaintiff's Motion for Leave to File Sur-Reply is **denied as moot.**

### I.    Factual and Procedural Background

The factual background provided in the summary judgment record is summarized as follows. These facts are largely undisputed; however, where they are in dispute, they are presented in the light most favorable to Plaintiff. Plaintiff Ann Cortez ("Cortez") was initially employed by Defendant Raytheon Company ("Raytheon") in 1998. Except for a one-year period where she left to work for another company, Cortez continued

working for Raytheon until November 2006.  Beginning in May 2005, Cortez held the position of Senior Information Systems Technologist II, which has a salary grade of E04.

Raytheon provides its employees with a summary plan description ("SPD") that describes benefits available to them.  In a section titled "Medical," which goes on for several pages, the SPD describes the various medical insurance plans available to Raytheon's employees, provides a summary of each plan's coverage, and explains status changes and rules for coordination of benefits.  Still under "Medical," in a sub-section entitled "As Your Needs Change," the SPD states, in pertinent part:

> [i]f you are on an authorized medical leave of absence, medical coverage for you and your dependents will continue for up to 24 months.  During the first 12 months of your leave, your coverage will be continued on a company-paid basis.  If your leave continues beyond this 12-month period, you may continue your coverage, provided you pay the employee contribution in effect at the time directly to Raytheon.  You are billed for your share of the cost.
>
> After you have been on a medical leave of absence for 24 months, your employment will be administratively terminated, and you may extend your coverage under COBRA regulations...

Chapman testified that any Raytheon employee who was out for any kind of leave for more than 24 months would be terminated.

In November 2005, Cortez began an approved  medical leave of absence due to complications from pregnancy.  She gave birth in December 2005.  Cortez's expected return to work date was February 13, 2006.  During her leave, Cortez suffered from post-partum depression and additional physical ailments.  Cortez did not return from

2

leave in mid-February 2006 as planned, instead requesting an extension of her leave of absence. Her request was granted, as were six additional requests by Cortez to extend her leave, totaling approximately nine additional months of medical leave. She was diagnosed with depression in mid-2006, and maintains that she was medically unable to work during all of that year.

MetLife is Raytheon's disability benefits carrier, and acts as the claims administrator for Raytheon's Disability Benefits Plan ("Plan"). Decisions to grant or deny benefits under the Plan are made at the discretion of MetLife. MetLife provided Cortez with short and long-term disability ("LTD") benefits during her medical leave of absence. Her LTD benefits originally ended on or about August 27, 2006; however, Plaintiff sought an extension of those benefits that was granted by MetLife, extending her LTD benefits through September 10, 2006. Although Cortez provided additional medical documentation to MetLife seeking to extend her benefits even further, MetLife determined that the new information did not change its evaluation of her claim, and that there was nothing indicating that Cortez had a medical condition that prevented her from working beyond September 10, 2006. MetLife conveyed its decision to Hulda Wood ("Wood"), a Senior Employee Benefits Administrator, on November 1, 2006.

After MetLife informed Raytheon that no extension of Cortez's LTD benefits beyond September 10, 2006 was warranted. Wood reviewed MetLife's documentation and the medical information provided in MetLife's claim review forms pertaining to

Cortez.  Wood did not see anything in the claim review form that would have supported Cortez's continued absence from work.   In November 2006, Raytheon's Human Resources Manager Stacey Chapman ("Chapman") had a telephone conversation with Cortez, who told him her doctor had not authorized her to return to work.  She also stated that she would provide Raytheon with whatever medical documentation it required to justify extending her leave, or to allow her to work from home.  Alternatively, she requested an educational leave of absence to pursue her Masters' degree.  Raytheon denied her request for educational leave.

On November 16, 2006, Chapman sent Cortez a letter stating that because MetLife had stopped paying her claim as of September 10, 2006 due to a lack of supporting medical documentation, and she had exhausted her FMLA leave as of February 6, 2006, she must return to her job by November 27, 2006.  Chapman's letter further states that if she did not return to work as requested, Raytheon would consider her to have abandoned her job and her employment would be terminated.

Cortez responded to Chapman's letter on November 21, 2006, stating in an email that her doctor would not release her to return to work on November 27, but that he wanted to monitor her condition over the next four to eight weeks and had stated that it was "extremely probable" that she would be able to return to work in January 2007. Chapman replied to Cortez's November 21 email that same day, advising Cortez that she needed to either come back on November 27, or put pressure on her physician to submit

4

needed paperwork to MetLife in order to extend her medical leave of absence.  Both Cortez and her treating psychiatrist state that she was unable to work at least through the end of 2006.  However, Cortez provided no additional documentation to MetLife or Raytheon regarding her need for additional medical leave.  When Cortez did not return to work on November 27, Chapman terminated her employment.  Chapman sent Cortez a letter dated November 28, 2006 telling her that she had been discharged.

Cortez was eligible for re-hire, and after her termination she sought employment with Raytheon.  Between February 2007 and August 2008, she applied for 12 different positions through Raytheon's online RAYCATS system.  Each Raytheon business unit has its own recruiting employees who handle job requisitions for that particular business. Three of the requisitions Cortez applied for were canceled, and no one was hired to fill those particular positions.  Cortez was not hired for any of the other positions she applied for.  Chapman was aware that she had applied for re-hire, but does not know why she was not re-hired.  Cortez does not know who made the final hiring decisions related to these positions, or whether any of the relevant decision-makers had any knowledge of her involvement in any protected activity.

After she was terminated and not re-hired, Cortez filed suit against Raytheon, claiming that it had discriminated against her based upon gender and disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* and the Texas Commission on Human Rights Act ("TCHRA") Tex. Lab. Code § 21.001, *et*

*seq.* She also brings claims for retaliation and under the Employee Retirement Income Security Act ("ERISA").  Raytheon now moves for summary judgment on all of Cortez's claims.

## II.    Summary Judgment Standards

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

## III.   Raytheon's Motion for Summary Judgment

Raytheon contends that Cortez cannot present a genuine issue of material fact

regarding any of her claims against it.  Therefore, Raytheon believes that it is entitled to judgment as a matter of law.  Each of Cortez's claims will be analyzed below.

### A.    Gender Discrimination

As Raytheon points out, Cortez has not briefed any arguments or presented any evidence pertaining to her gender discrimination claim.  If a party fails to pursue a claim or defense beyond the initial pleading, the issue is deemed abandoned. *Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n. 1 (5th Cir.2006); *Vela v. City of Houston,* 276 F.3d 659, 678-79 (5th Cir .2001); *see also United States v. Stevens,* 487 F.3d 232, 242 n.1 (5th Cir. 2007) (inadequately briefed issues are deemed abandoned).  Because Cortez has not briefed the issue or carried her summary judgment burden with respect to this claim, it will be dismissed, and summary judgment entered for Raytheon.

### B.    Disability Discrimination

Cortez alleges that Raytheon violated the ADA and the TCHRA  by discriminating against her on the basis of her disability.  Although Cortez relies upon both the ADA and the TCHRA to provide a statutory basis for her disability-related claims, the law governing claims under the two statues is identical.  *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 n.2 (5th Cir. 1999); *Colbert v. Georgia-Pacific Corp.,* 995 F. Supp. 697, 701 (N.D. Tex. 1998).  Therefore, these claims may be considered together.

"The ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment

opportunities that are available to persons without disabilities." *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 161 (5th Cir.1996) (*quoting* 29 C.F.R. § 1630, App. (1995)). In the employment context, the ADA prohibits discrimination against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). Specifically, Cortez alleges that Raytheon violated the ADA by 1) terminating her employment because she is disabled (*see* 42 U.S.C. § 12112(a)); and 2) failing to make reasonable accommodation for her disability (*see* 42 U.S.C. § 12112(b)(5)(A)).

The threshold issue in an ADA case is the plaintiff's showing that she is disabled within the meaning of the ADA. *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998). Briefly, the ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

## 1.    Discriminatory Discharge

A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the indirect method of proof set for Title VII actions in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973), may also be utilized. *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995).

8

Cortez argues that she has presented direct evidence of discrimination to the court because Chapman testified that he terminated Cortez when she failed to return to work upon the expiration of her unpaid medical leave, after Cortez told him her doctor would not release her to work at that time.   Direct evidence is evidence which, if believed, proves the fact in question without inference or presumption.   *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir.2003).   In the employment discrimination context, this includes "any statement or document which shows on its face that an improper criterion served as the basis for an adverse employment action." *Id.* at 415. However, if an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897-98 (5th Cir.2002).

In the court's view, this statement by Chapman does not constitute direct evidence.   Chapman does not admit directly that his decision was made because of Cortez's disability.   Rather, Chapman stated that he fired Cortez because she could not, and did not return to work in late November 2006 as requested.   To construe this statement as proof that Cortez was discharged because of her disability would require an inference by the fact-finder.   Accordingly, Cortez must proceed by using the *McDonnell Douglas* analysis for circumstantial evidence of discrimination.   *See Cleveland v. Policy Mgmt. Sys. Corp.,* 120 F.3d 513, 515-16 (5th Cir. 1997) (in the absence of direct

evidence of discrimination, burden-shifting analysis is applied).

Because Cortez has not established her claim via direct evidence, she must proceed by providing proof satisfying the indirect evidence framework. *See McInnis v. Alamo Comm. College Dist.,* 207 F.3d 276, 279 (5th Cir.2000) (where plaintiff offers only circumstantial evidence of disability discrimination, court applies the *McDonnell Douglas* burden-shifting method of proof). Under the *McDonnell Douglas* analysis, a plaintiff must first make out a *prima facie* case of discrimination by showing that: 1) he or she suffers from a disability; 2) he or she is qualified for the job; 3) he or she was subject to an adverse employment action; and 4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *McInnis,* 207 F.3d at 279; *Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 254 (5th Cir.1990); *EEOC v. Brown & Root, Inc.,* 688 F.2d 338, 340-41 (5th Cir.1982).

Here, the parties do not dispute at the summary judgment stage whether Cortez was disabled as contemplated by the ADA. Rather, Raytheon asserts that Cortez cannot establish the second element of her *prima facie* case – that she was qualified for her position. A qualified individual with a disability is an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 42 U.S.C. § 12111(8); 29 C.F.R. 1630.2(m); *E.E.O.C. v. Chevron Phillips Chemical Co., LP,*

570 F.3d 606, 615 n.7 (5th Cir. 2009).  In general, the "essential functions" of a job are the fundamental job duties of the employment position the individual with a disability holds or desires.  29 C.F.R. 1630.2(n)(1); *see also Chandler v. City of Dallas,* 2 F.3d 1385, 1393-94 (5th Cir. 1993), *cert. denied,* 511 U.S. 1011 (1994) (essential functions are those that bear more than a marginal relationship to the job at issue).  The ADA requires that consideration be given to the employer's judgment as to what functions of a job are essential.  42 U.S.C. §12111(8).

On summary judgment, Raytheon has set forth evidence that attendance at work was an essential function of Cortez's position.  Cortez has not disputed this evidence.  Further, it is undisputed that as of the time of her discharge, Cortez could not work at all.  Because Cortez could not attend work, she is not a "qualified individual with a disability" under the ADA. *See, e.g., Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996) (essential element of any job is the ability to appear for work); *Carr v. Reno,* 23 F.3d 525, 529-30 (D.C. Cir. 1994) (coming to work regularly is an "essential function"); *Grubb v. Southwest Airlines,* 2008 WL 4538313, **4 (5th Cir. 2008), *cert. denied,* 129 S. Ct. 1986 (2009) (lack of physical presence is a commonly-accepted disqualification for ADA protection); *see also Griffith v. Wal-Mart Stores,* 135 F.3d 376, 380 (6th Cir.1998), *cert. denied,* 526 U.S. 1144 (1999)(relevant time for determining whether an employee is a qualified individual with a disability is at the time of discharge).  Because Cortez has not set forth evidence showing that she was qualified for

11

her position, she has not successfully established a *prima facie* case of discrimination based upon disability.

Further, even if Cortez had established a *prima facie* case (which she has not), the court finds that Raytheon has articulated a legitimate, non-discriminatory reason for her discharge. Raytheon's summary judgment evidence shows that Cortez's leave of absence had ended, and Cortez's physician had not provided any documentation to MetLife which would justify further medical leave. Because Cortez did not return to work as requested, she was terminated.

Because Raytheon has set forth a legitimate, non-discriminatory reason for its decision, the *McDonnell Douglas* burden-shifting framework falls away and the burden shifts to Cortez to raise a genuine issue of material fact as to the ultimate question – whether Raytheon's reason is either 1) pretextual (pretext alternative); or 2) if Cortez admits Raytheon's reason is true, intent to discriminate also motivated the decision (mixed-motive alternative). *Alvarado v. Texas Rangers,* 492 F.3d 605, 611 (5th Cir. 2007); *St. John v. NCI Bldg. Sys., Inc.,* 537 F. Supp.2d 848, 858 (S.D. Tex. 2008); *see also Buchanan v. City of San Antonio,* 85 F.3d 196, 200 (5th Cir. 1996) (ADA provides for the same procedures and remedies as Title VII). Under the mixed-motive option, if the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have

taken the same action despite the discriminatory animus.  *Richardson v. Monitronics Intl., Inc.,* 434 F.3d 327, 333 (5th Cir. 2005).

Cortez does not request a mixed-motives analysis here, arguing that Raytheon's legitimate, non-discriminatory reason for her discharge is a pretext for discrimination because 1) Chapman knew her physician had not authorized her to return to work, and he was "tired of dealing with Cortez," and 2) she had not taken the 24 months of medical leave required to trigger an administrative termination.  *See Nasti v. CIBA Specialty Chems. Corp.,* 492 F.3d 589, 595 (5th Cir.2007) (holding that plaintiff who failed to raise mixed-motive claim to the district court waived it).

It is undisputed that as of November 28, 2006, Cortez was medically unable to come back to work, but did not get her doctor to submit the necessary information to MetLife that would have permitted a further extension of her medical leave.  Her having failed to do so, Raytheon and MetLife had no documentation of her medical condition that would justify further leave; thus, Raytheon required her to appear for work.  The record shows that *at the time the decision was made,* Chapman had no documentation establishing that she needed to continue on medical leave, and the absence of such documentation indicated that Cortez could return to work, but did not.  Therefore, even though Cortez told Chapman that her physician had not authorized her return, no confirmation of this representation by Cortez was forthcoming from her physician. Thus, Chapman was left to conclude that Cortez should be back at work, but chose not

13

to return.  These facts show that Raytheon terminated Cortez because she failed to return to her job as requested, and that this reason is not a pretext for discrimination.

The fact that Cortez was not permitted to take 24 months of medical leave before she was fired also does not raise a genuine issue of material fact regarding pretext.  This argument is premised on Cortez's speculation that the SPD entitled her to up to 24 months of medical leave before Raytheon could terminate her.  Although the SPD states that an employee who was out on leave for 24 months would automatically be administratively terminated, the section of the SPD upon which Cortez relies expressly refers to *authorized* medical leaves.  (Emphasis added).  It is clear that Raytheon did not authorize any leave for Cortez beyond November 27, 2006.  Moreover, this section of the SPD merely provides a description of how medical insurance coverage is handled when employees are on leave. It does not outline or explain Raytheon's actual leave policy.

Cortez provides no proof that as a Raytheon employee, she was somehow entitled to up to 24 months of medical leave (whether documented by a physician or not) before Raytheon could terminate her.  That she was discharged before reaching the 24-month threshold for administrative termination does not raise a genuine issue of material fact regarding pretext.  Accordingly,  because Cortez cannot set forth facts raising a material fact issue regarding both her  *prima facie* case of disability  discrimination and whether

Raytheon's reasons for her discharge were pretextual, the court must enter summary judgment for Raytheon on her claim of discriminatory discharge.

## 2.    Failure to Accomodate

In addition to her discharge, Cortez claims that Raytheon discriminated against her because of her disability by failing to provide her with a reasonable accommodation. In Cortez's view, Raytheon should have accommodated her by further extending her leave of absence, allowing her to telecommute or giving her educational leave.  The ADA prohibits discrimination on the basis of a disability, and expressly defines such discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(a). Therefore, it is a violation of the ADA for failing to reasonably accommodate an employee unless the employer can demonstrate that the accommodation  causes undue hardship.  *Id; Riel v. Elec. Data Sys. Corp.,* 99 F.3d 678, 681-82 (5th Cir. 1996).

The ADA makes clear that "an employer's obligation to provide a 'reasonable accommodation,' when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability to perform the essential functions of his or her job." *Burch v. Coca-Cola Co.,* 119

F.3d 305, 314 (5th Cir.1997). "To establish a claim for failure to accommodate, a plaintiff must show that: 1) she is a qualified individual with a disability; 2) the employer was aware of her disability; and 3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir.2005). As to the third element, "the ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation." *Id.* (*quoting Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633 (7th Cir.2001)). "Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir.1999). However, these courts have also held that the employer cannot be found to have violated the ADA when responsibility for the breakdown of the interactive process is traceable to the employee and not the employer. *Id.*

Like her disability discrimination claim, Cortez's failure to accommodate claim requires a showing that she is qualified.  As stated above, to be protected by the ADA, one must be a "qualified individual," who can perform the essential functions of the employment position, either with or without reasonable accommodation.  42 U.S.C. § 12111(8).  Raytheon has presented evidence supporting its motion for summary judgment that shows attendance at work to be an essential function of Cortez's position. Cortez has not disputed this evidence, and the summary judgment record shows that at

16

the time of her discharge, Cortez was unable to come to work. Therefore, she cannot establish the first element of her failure to accomodate claim.

Further, to successfully assert this claim, Cortez must show that Raytheon failed to reasonably accommodate the disability. *Sears,* 417 F.3d at 797. The record shows that Raytheon worked with Cortez and MetLife for approximately nine months by repeatedly extending her medical leave. Cortez wanted to continue on medical leave , take educational leave, or telecommute, any of which meant she would not be coming to work, which Raytheon has shown to be an essential function of her job. An accommodation that does not permit an employee to perform essential job functions cannot be considered reasonable. In other words, Raytheon was not required to eliminate the requirement that Cortez appear for work in order to accommodate her disability. *See Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir. 1993) (employer not required to eliminate essential job functions in order to furnish an accommodation); *Pedroza v. Autozone, Inc.,* 536 F. Supp.2d 679, 697 (W.D. Tex. 2008)(same).

Additionally, the best Cortez could offer as to when she would return to work was speculation that she could possibly be back in January 2007. With no definite return date, Cortez was asking for an open-ended leave. As Raytheon points out in its briefing, courts have held that an indefinite leave does not constitute reasonable accommodation. *Reed v. Petroleum Helicopters, Inc.,* 218 F.3d 477, 481 (5th Cir. 2000); *Rogers v. International*

17

*Marine Terminals,* 87 F.3d 755, 759-60 (5th Cir.1996). Because Cortez cannot raise a genuine issue of material fact whether she is a qualified individual with a disability, or whether Raytheon failed to reasonably accommodate her disability, this claim must also be dismissed on summary judgment.

### C.    Retaliation

Cortez also brings a claim of retaliation against Raytheon.  Specifically, Cortez alleges that Raytheon did not hire her for the positions she applied for subsequent to her termination in order to retaliate against her for bringing her termination-related claims. Retaliation claims brought under the ADA are analyzed using the *McDonnell Douglas* burden-shifting test applied to Cortez's disparate treatment discrimination claim. First, she must establish a *prima facie* case of retaliation. If she is successful, the burden shifts to Raytheon to articulate a legitimate, non-discriminatory reason for the challenged employment action. If Raytheon does so, Cortez must demonstrate that the proffered reason is either pretextual, or if the proffered reason is admittedly true, that retaliatory intent also motivated Raytheon's hiring decisions.   *Richardson*, 434 F.3d at 333; *McKnight v. Trinity River Authority of Texas,* 2009 WL 1117436, *5 (N.D. Tex. 2009). In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose." *Septimus v. Univ. of Houston,* 399 F.3d 601, 608 (5th Cir.2005). Again, Cortez does not assert that the mixed-motive analysis should be applied to her

retaliation claim, so the court will review her claim using the pretext standard for the third step of the *McDonnell Douglas* analysis. *Nasti*, 492 F.3d at 595.

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: 1) she engaged in an activity protected by the ADA; 2) she was subjected to an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action. *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999); *Grizzle v. The Travelers Health Network,* 14 F.3d 261 (5th Cir. 1994). Here, Raytheon argues that Cortez cannot present evidence of a causal connection – that her protected activity caused it not to rehire her. In response, Cortez argues that some Raytheon managers were aware of her May 2007 charge of discrimination, and that in 2008 Chapman informed Cynthia Payne ("Payne"), a Raytheon recruiter, that Cortez had an "employee relation matter." Meanwhile, Raytheon has set forth evidence on summary judgment showing that none of the decision-makers regarding the positions that Cortez applied for had any knowledge of her discrimination claims. Cortez has not disputed this proof. For these reasons, the court finds that Cortez has failed to show a causal link between her protected activity and Raytheon's failure to rehire her. Therefore, Cortez cannot establish a *prima facie* case of retaliation.

Even if Cortez had successfully articulated her *prima facie* case, the court further finds that Raytheon has properly stated a legitimate, non-retaliatory reason for not hiring her. Raytheon's witnesses testified that Cortez was not hired for the positions for

19

which she applied because she did not meet the basic qualifications for those positions, or that she was not the most qualified applicant.

Because Raytheon has articulated legitimate non-retaliatory reasons for not rehiring Cortez, she would then have to present evidence raising a genuine issue of material fact whether those reasons are actually a pretext for retaliation.  Cortez does not even attempt to show that she was "clearly better qualified" than the candidates selected for those positions (*see, e.g., Price v. Fed. Express Corp.,* 283 F.3d 715, 723 (5th Cir. 2002), *citing EEOC v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1444 (5th Cir. 1995)), or otherwise come close to disputing Raytheon's proof.   Instead, she responds to Raytheon's legitimate non-retaliatory reasons by implying that Chapman somehow had a duty to reinstate Cortez or help her to be rehired by notifying her of open positions. None of these conclusory assertions suggest that Raytheon's reasons for not hiring Cortez for any of the jobs she applied for are untrue.  For this reason, and also because she is unable to make a *prima facie* showing that Raytheon retaliated against her, the court will enter summary judgment for Raytheon on Cortez's retaliation claim.

### D.   ERISA Claim

Cortez alleges various claims arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*  Specifically, Cortez claims that Raytheon violated ERISA  by terminating her in retaliation for exercising her rights under ERISA plans, while intending to interfere with her attainment of rights under

those plans, denying her benefits under the alleged ERISA plans, and "refusing to accept [her] physician's determination." It appears that Cortez may be seeking relief pursuant to 29 U.S.C. §§ 1140 and 1132(a)(1)(B). On summary judgment, Raytheon contends that Cortez has not stated a claim under ERISA, and moves for summary judgment on these claims.

The parties dispute whether Raytheon's leave of absence procedure was an ERISA plan, or whether the references in the SPD relied upon by Cortez merely discuss how medical benefits are handled should an employee be granted a leave of absence. In any event, it is not necessary for the court to determine whether there was an applicable ERISA plan, because even if there were such a plan, Cortez is unable to establish other critical elements of her claim.

To establish a *prima facie* claim of retaliation under § 1140, Cortez must establish that Raytheon fired her in retaliation for exercising an ERISA right or to prevent attainment of benefits to which she would have become entitled under an employee benefit plan. *Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254,260 (5th Cir. 2001) (*citing Rogers,* 87 F.3d at 761). Specific discriminatory intent is an essential element of Cortez's claim. *Rogers,* 87 F.3d at 761; *see also Kouvchinov v. Parametric Tech. Corp.,* 537 F.3d 62 (1st Cir.2008) ("[W]ithout a specific intent requirement, every terminated employee who has exercised his or her right to benefits would, ipso facto, have a potential retaliation claim against the employer. That would destroy ERISA's carefully

calibrated balance of rights, remedies, and responsibilities in the workplace." (internal citations omitted)).  Furthermore, to establish her ERISA claim, Cortez must show that she was qualified for her position.  *Custer v. Murphy Oil USA, Inc.,* 503 F.3d 415, 424 (5th Cir. 2007); *Holtzclaw,* 255 F.3d at 260.

As discussed above with respect to her other claims, the court has determined that Cortez cannot show that she was qualified for her position.  Further, Cortez has not set forth any evidence that Raytheon had a specific intent to retaliate against her in violation of ERISA.  Cortez's own summary judgment evidence shows that Chapman terminated Cortez because she had exhausted her FMLA leave, MetLife had determined she no longer qualified for disability benefits, she did not provide Raytheon or MetLife with documentation which would have justified a further extension of her medical leave, and she did not return to work on November 27, 2006 as requested.  Despite Cortez's assertions otherwise, this testimony does not raise a material fact issue regarding specific retaliatory intent.  Therefore, because Cortez cannot establish these two critical elements of her ERISA claim, this claim must also be dismissed.

Although Cortez refers to the recovery of ERISA plan benefits in her pleading, it appears that she no longer intends to pursue such a claim, as she has not sued MetLife, the plan administrator.  *See Halladay v. Metropolitan Life Ins. Co.,* 2008 WL 1751965, *1 (S.D. Tex. 2008) (proper party to an ERISA dispute is the plan, not plaintiff's employer); *Pickett v. Cigna Healthplan of Texas,* 742 F. Supp. 946 (S.D. Tex. 1990) (same).

She also has not briefed this claim on summary judgment, so the court considers it to be abandoned. *Black*, 461 F.3d at 588 n. 1; *Vela*, 276 F.3d at 678-79; *Stevens,* 487 F.3d at 242 n.1.

### IV.     Plaintiff's Motion for Leave to File Sur-Reply Opposing Defendant's Motion for Summary Judgment

Cortez requests the opportunity to file a sur-reply to Raytheon's reply, contending that Raytheon has raised new issues in its summary judgment reply brief.  The court has reviewed Cortez's proposed sur-reply, and has determined that it reaches the same conclusions regarding Cortez's claims whether or not the proposed sur-reply is considered.   Therefore, Plaintiff's Motion for Leave to File Sur-Reply Opposing Defendant's Motion for Summary Judgment is **denied as moot.**

### V.     Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claims are hereby **dismissed with prejudice.**  Judgment will be entered by separate document.

**SO ORDERED.**

Signed October 1st, 2009.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE